UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ASHLEY KRUSE, | ) | 3:06CV3079 |
| | ) | |
| Petitioner | ) | JUDGE SOLOMON OLIVER |
| | ) | (Magistrate Judge Kenneth S. McHargh) |
| v. | ) | |
| | ) | |
| ERNIE L. MOORE, | ) | |
| Warden, | ) | |
| | ) | |
| Respondent | ) | REPORT AND RECOMMENDED |
| | ) | <u>DECISION OF MAGISTRATE JUDGE</u> |

McHARGH, MAG. J.

The petitioner Ashley Kruse ("Kruse") has filed pro se a petition for a writ of habeas corpus arising out of his 2004 convictions for three counts of trafficking in cocaine and one count of engaging in a pattern of corrupt activity in the Wood County, Ohio, Court of Common Pleas. (Doc. 1.) Kruse raises two grounds for relief in his petition:

> 1. In a prosecution of an actual sale of drugs pursuant to R.C. [Ohio Revised Code Section] 2925.03(A), the offense of trafficking is complete at the time that the drugs are transferred, irrespective of whether the transferor receives money in exchange for the drugs at the time that the transfer takes place.
>
> 2. The trial court erred to the prejudice of appellant by finding him guilty of aiding and abetting first degree trafficking. A conviction for complicity is proper only when the evidence establishes that a person acts as an aider and abettor rather than a principal offender.

(Doc. 1, at § 12.)

I. FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual and procedural background:

On May 6, 2004, appellant was indicted and charged with three counts of trafficking in cocaine, all in violation of R.C. 2925.03(A)(1) and (C)(4)(e) and all with the specification that the offense was committed in the vicinity of a school. In addition, appellant was charged with one count of engaging in a pattern of corrupt activity in violation of R.C. 2923.32. The indictment was the result of an investigation into drug trafficking in Wood County by members of the Drug Enforcement Task Force and the Ohio Attorney General's Office in February and March 2004. As a result of that investigation, several members of a drug trafficking enterprise were arrested. As a result of these arrests, officers learned that appellant, who then lived in Galena, Delaware County, Ohio, supplied the Wood County traffickers with cocaine and charged him as stated. Appellant pled not guilty to the charges, and on October 20, 2004, the case proceeded to a trial to the bench after appellant waived his right to a jury trial. At the trial, the following evidence was presented.

Benjamin Snyder and appellant have known each other since high school. In November 2003, Snyder was working as a car salesman for his father in Napoleon, Henry County, Ohio, when he sold appellant a blue 1997 Buick Regal. Appellant paid for the car in cash, which piqued Snyder's interest. Snyder knew the cash came from drug activity. He and appellant then discussed setting up a procedure whereby appellant would supply Snyder with cocaine that Snyder would then distribute in Northwest Ohio. Snyder testified that the drugs would be brought to him and he would send the money back down to appellant in Galena via a driver, who he identified as Mark Behnfeldt.

Subsequently, Snyder was approached by Cody Warren, who wanted to buy four ounces of cocaine. Snyder then contacted appellant to arrange for delivery. Although appellant and Snyder had originally decided to use Behnfeldt as a courier, appellant's grandfather, who lived in Napoleon, had just died. Because he was traveling to Northwest Ohio for the funeral, on February 25, 2004, appellant met up with Snyder in Bowling Green to deliver the cocaine himself. The two met at 315 ½ East Wooster Street, a home shared by Kory Storch, Tyson Boulton

2

and Brooks Pedroza, whom Snyder and appellant had known since high school. The East Wooster Street home is approximately 270 feet from an elementary and junior high school. Photographs admitted into evidence at the trial below reveal that the school is in plain sight of the home. After appellant delivered the cocaine to Snyder, Snyder called Warren to arrange the sale. Warren in turn was arranging the sale on behalf of two individuals who, unbeknownst to him were a confidential informant ("CI") and Mark Apple, an undercover agent with the Ohio Attorney General's Office. Subsequently, Warren, Apple and the CI drove to the East Wooster Street address, Warren entered the home, returned to the car with approximately four ounces of cocaine, retrieved $3,300 from Apple, and took that money back into the home. Apple and the CI then left. Inside the residence, Snyder took a portion of the money for himself and gave the remainder to appellant. These events occurred between 7:00 and 8:00 in the evening.

Subsequently, Warren contacted Snyder and indicated that he wanted to buy eight ounces of cocaine. Snyder then contacted appellant and ordered 8 ounces of cocaine "for my guy here in Bowling Green." Behnfeldt then drove to appellant's home in Galena to pick up the drugs. On March 18, 2004, Snyder met Warren, again at the East Wooster Street address, to complete the sale. Warren took the cocaine to his buyers, again Agent Apple and the CI, who were parked in a car nearby. Apple then gave Warren $6,500, which Warren took back into the residence. Snyder then called appellant to confirm that the sale had been completed and that Behnfeldt would be bringing appellant's share of the proceeds to Galena.

Shortly thereafter, Warren contacted Snyder and asked if he could buy 16 ounces of cocaine. Again, this was initiated when Agent Apple, working undercover, sought to purchase that amount. Snyder then contacted appellant and ordered the 16 ounces for Warren as well as two additional ounces for a customer. Appellant stated that it would not be a problem. During the week of March 24, 2004, Behnfeldt was not available to drive to Galena, so Snyder asked Tyson Boulton if he could drive to appellant's home in Galena to pick up 18 ounces of cocaine. Snyder offered to pay Boulton $200 and Boulton agreed to make the trip. On March 24, Boulton and Jared Rathge drove to Galena to pick up the cocaine. When Boulton arrived, appellant told him that what he wanted was in a Zinger's box and that it was to go to Ben Snyder. Boulton picked up the box and drove it back to the East Wooster Street home in Bowling Green. Boulton testified that he never looked in the box and that when he returned home, Snyder took the

3

box "upstairs like he always does." Snyder then measured the cocaine and stored it in a microwave oven in Kory Storch's bedroom closet.

On March 30, 2004, Snyder traveled to the East Wooster Street residence in Bowling Green to complete the sale of 16 ounces of cocaine to Warren. Warren then contacted Apple and told him to park in a nearby parking lot. Warren brought Apple the 16 ounces of cocaine in exchange for $12,560. Warren took the money into the residence and returned shortly thereafter to Apple's car. Warren then asked Apple for a ride home. While Apple was driving Warren back home, they were stopped by officers of the Bowling Green Police Department. Simultaneously, officers raided the East Wooster Street residence and arrested Snyder and the other occupants. After that raid, Snyder agreed to cooperate with the police. Snyder then telephoned appellant to inform him that the sale had gone through. Officers tape recorded that conversation. During that conversation, appellant noted that he had been waiting for Snyder to call. Snyder confirmed that the sale had been completed and that he had appellant's share of the proceeds. Snyder then told appellant that the same buyer wanted to purchase 32 ounces of cocaine. Appellant responded that he would call Snyder back the next day with a price. Appellant also stated that he had "pressed" all of the cocaine himself.

On April 26, 2004, officers from the Delaware County Sheriff's Office were conducting surveillance of appellant's home in Galena, Ohio, when they observed appellant load several bags of trash into the back of a four-door maroon Honda and drive to the end of the driveway at a horse farm where appellant apparently lived and worked. Officers then saw appellant put the trash into a commercial dumpster. After appellant left the area, officers pulled the trash and searched the contents of the trash bags. The officers found ledgers, an envelope containing appellant's name and address, and an empty box for a I-500 Compact Professional Digital Scale. The officers subsequently obtained a search warrant for appellant's residence. Initially, upon apprehending him, appellant agreed to cooperate and gave officers information regarding his supplier. Subsequently, however, appellant ceased cooperating and he was then indicted and charged with the offenses as stated above.

After the state presented its case, appellant moved for acquittal of all charges pursuant to Crim.R. 29. With respect to the trafficking counts, appellant asserted that the state had failed to prove venue, that is, that appellant transferred cocaine to any individual in Wood County

4

on February 25, March 18, or March 30, 2004. As to Count 4 of the indictment, appellant asserted that the state had failed to submit sufficient proof to establish a conspiracy to engage in a pattern of corrupt activity. The lower court granted the motion as to Count 4 of the indictment but denied it as to the remaining counts. Subsequently, the court found appellant guilty of all three trafficking charges. The court also found that the offenses had been committed in the vicinity of a school and so found appellant guilty of the specifications attached to each offense.

Prior to the sentencing hearing, appellant filed a motion to empanel a jury to hear and determine issues relevant to sentencing. The court denied the motion. Appellant also filed an affidavit of indigency in which he asserted that he had no income or assets which would enable him to pay a fine. On December 10, 2004, the case proceeded to a sentencing hearing. On each trafficking offense, the court sentenced appellant to a term of three years imprisonment. The court then ordered the terms to run consecutively, finding that consecutive sentencing was necessary to protect the public from future crime and that consecutive sentencing was not disproportionate to the seriousness of appellant's conduct and to the danger appellant posed to the public. The court then stated that in view of the harm caused by the multiple offenses, no single term adequately reflected the seriousness of appellant's offenses. The court further found that appellant's history of criminal conduct with respect to drug offenses demonstrated that consecutive sentences were necessary to protect the public from future crime. Finally, the court ordered appellant to pay fines of $10,000 on each of the three convictions, for a total fine of $30,000. Subsequently, appellant filed a motion for modification of the sentence. Appellant noted that he had filed an affidavit of indigency with the court on October 18, 2004, and asked the court to enter a nunc pro tunc judgment entry, deleting the $10,000 fines from the sentence. The court denied the motion.

(Doc. 9, RX F, at 3-8; State v. Kruse, No. WD-05-001, 2006 WL 1718194, at *1-*4

(Ohio Ct. App. June 23, 2006).)

On direct appeal, Kruse raised four assignments of error:

5

> 1. The trial court's verdicts of guilty as to counts two and three of the indictment are based upon insufficient evidence, as the prosecution failed to establish venue as to either offense.
>
> 2. The trial court erred to the prejudice of appellant by finding him guilty of aiding and abetting first degree felony trafficking offenses as to counts two and three of the indictment, as the evidence did not establish that appellant had actual knowledge of the quantities of drugs sold nor the location of the sales.
>
> 3. The trial court erred to the prejudice of appellant by failing to empanel a jury for sentencing, and further by sentencing appellant to consecutive terms of imprisonment based upon judicial fact-finding by upon a preponderance of the evidence standard, all in violation of appellant's rights to trial by jury as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.
>
> 4. The trial court erred to the prejudice of appellant and abused its discretion by imposing mandatory fines as part of his sentences for trafficking cocaine, as appellant timely filed an affidavit of indigency and the court did not conduct any inquiry into the issue of appellant's indigency; moreover, appellant was given a cumulative sentence of nine years of actual incarceration, which prevents him from paying the imposed fines.

(Doc. 9, RX D.) The appellate court affirmed in part and reversed in part the judgment of the trial court. (Doc. 9, RX F; State v. Kruse, No. WD-05-001, 2006 WL 1718194 (Ohio Ct. App. June 23, 2006).) The court remanded for resentencing. (RX F, at 15-18; Kruse, 2006 WL 1718194, at *8-*9.) On July 20, 2006, the court imposed sentences of three years on each of the three counts, to be served consecutively. (Doc. 9, RX G.)

On Aug. 3, 2006, Kruse filed a timely notice of appeal with the Ohio Supreme Court. He set forth two propositions of law:

> 1. In a prosecution for an actual sale of drugs pursuant to R.C. 2925.03(A), the offense of a trafficking is complete at the time that the

>drugs are transferred, irrespective of whether the transferor receives money in exchange for the drugs at the time that the transfer takes place.
>
>2. A conviction for complicity is proper only when the evidence establishes that a person acts as an aider and abettor rather than a principal offender.

(Doc. 9, RX H.) On Nov. 1, 2006, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (Doc. 9, RX J; State v. Kruse, 111 Ohio St.3d 1471, 855 N.E.2d 1259 (2006).)

On Dec. 26, 2006, Kruse filed a timely petition for a writ of habeas corpus. (Doc. 1.)

## II. HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus. Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court. The Supreme Court, in Williams v. Taylor, provided the following guidance:

>Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case

> differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002). See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Williams, 529 U.S. at 405. See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

Kruse has filed his petition pro se. The pleadings of a petition drafted by a pro se litigant are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed. Urbina v. Thoms, 270 F.3d 292, 295 (6th Cir. 2001) (citing Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972) (per curiam)). Other than that, no special treatment is afforded litigants who decide to proceed pro se. McNeil v. United States, 508 U.S. 106, 113 (1993) (strict adherence to procedural requirements); Jourdan v. Jabe, 951 F.2d 108 (6th Cir. 1991); Brock v. Hendershott, 840 F.2d 339, 343 (6th Cir. 1988).

Several of the grounds put forward by Kruse allege violations of Ohio law. The question before this federal habeas court is whether the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Federal habeas relief is not available for a claimed violation of state law, thus any alleged violation of Ohio law is not properly before this court. See Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

## III. IMPROPER VENUE?

The respondent argues that both grounds of the petition raise issues of state law, and are not cognizable in a federal habeas action. He characterizes the first ground as an allegation of improper venue under Ohio law, and the second as an argument that "Ohio law required [Kruse] to be found guilty as a complicitor rather than as a principal offender." (Doc. 9, at 10.)

The first ground of the petition is:

> In a prosecution of an actual sale of drugs pursuant to [Ohio Revised Code Section] 2925.03(A), the offense of trafficking is complete at the time that the drugs are transferred, irrespective of whether the transferor receives money in exchange for the drugs at the time that the transfer takes place.

(Doc. 1, at § 12.)

In his direct appeal, Kruse presented the argument that his convictions on two counts were based on evidence that he trafficked cocaine in Delaware County, not Wood County, and therefore the Wood County trial court lacked the requisite

9

venue over his offenses.  (Doc. 9, RX D, at 9-18.)  Kruse recognized that "venue is not a material element of any offense," but argued that venue must be established beyond a reasonable doubt.  Id. at 11, citing State v. Draggo, 65 Ohio St.2d 88, 418 N.E.2d 1343 (1981) (per curiam), and  State v. Gardner, 42 Ohio App.3d 157, 536 N.E.2d 1187 (Ohio Ct. App. 1987).  Kruse did not present this issue on appeal as a federal constitutional issue, but rather as an issue arising under state law.

The appellate court stated that, under Ohio law, defendants have the right "to be tried in the county in which the charged offense is alleged to have been committed."  (Doc. 9, RX F, at 9; Kruse, 2006 WL 1718194, at *4.)  The court further stated that "venue is a fact that must be proven in every criminal case even though it is not an element of the offense."  Id., citing Draggo, 65 Ohio St.2d at 90, 418 N.E.2d at 1345.  The court also noted that venue is proper if any element of the offense was committed in the county where the defendant was tried.  Id. See also State v. Jalowiec, 91 Ohio St.3d 220, 228, 744 N.E.2d 163, 174 (2001), cert. denied, 534 U.S. 964 (2001) (when offender commits offenses in different jurisdictions as part of criminal conduct, venue lies for all offenses in any jurisdiction in which offender committed one of the offenses or any element thereof, quoting State v. Beuke, 38 Ohio St.3d 29, 526 N.E.2d 274 (1988) (syllabus)); State v. Smith, 87 Ohio St.3d 424, 435, 721 N.E.2d 93, 107 (2000) (same).  However, this is a question of Ohio law.

This habeas court is limited to determining whether the state court decision was contrary to, or involved an unreasonable application of, clearly established

federal law, as determined by the Supreme Court of the United States. Lewis, 497 U.S. at 780. Although the Sixth Amendment provides that an accused has a right to jury trial in the "State and district wherein the crime shall have been committed," the U.S. Supreme Court has not found that this provision applies to the states. Cook v. Morrill, 783 F.2d 593, 595 (5th Cir. 1986). The Sixth Circuit and several other federal courts have found that it does not. Cook, 783 F.2d at 595; Keeton v. Bradshaw, No. 1:05CV0033, 2006 WL 2612899, at *14 (N.D. Ohio Sept. 8, 2006) (citing Caudill v. Scott, 857 F.2d 344 (6th Cir. 1988) (per curiam), and other cases). Kruse has failed to demonstrate that the state court decision regarding venue was contrary to, or involved an unreasonable application of, clearly established federal law.

The petition should not be granted on the basis of improper venue.

## IV. SUFFICIENCY OF THE EVIDENCE

In a similar argument, Kruse had claimed in the state court that the evidence was insufficient to convict him on venue grounds, and because he was unaware of the location of the actual sales. (Doc. 9, RX D.)

Under Supreme Court precedent, a sufficiency of the evidence claim is reviewed by determining whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Bagby v. Sowders, 894 F.2d 792, 794 (6th Cir.) (en banc), cert.

denied, 496 U.S. 929 (1990). "The question whether a defendant has been convicted upon inadequate evidence is central to the basic question of guilt or innocence." Jackson, 443 U.S. at 323.

A sufficiency of the evidence claim "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Sanford v. Yukins, 288 F.3d 855, 860 (6th Cir.), cert. denied, 537 U.S. 980 (2002) (quoting Jackson, 443 U.S. at 324 n.16). Thus, the federal court must look to state law to determine the elements of the crime. Cameron v. Birkett, 348 F.Supp.2d 825, 838-839 (E.D. Mich. 2004) (quoting Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999), cert. denied, 528 U.S. 1170 (2000)).

Under Ohio law, although venue must be proved at trial (unless waived): "Venue is not a material element of any offense charged. The elements of the offense charged and the venue of the matter are separate and distinct." Draggo, 65 Ohio St.2d at 90, 418 N.E.2d at 1345. See also Jalowiec, 91 Ohio St.3d at 228, 744 N.E.2d at 174 (venue not material element of any crime). It has been argued that "venue is not an 'essential element' of the offense because it is not one of the operative facts that make the accused's conduct a violation of a criminal statute." Gardner, 42 Ohio App.3d at 158, 536 N.E.2d at 1188. See, e.g., Haney v. Burgess, 799 F.2d 661, 663 (11th Cir. 1986) (per curiam) (under Alabama law, venue is not element of crime itself, and need not be alleged in indictment).

Thus, venue is not one of the "substantive elements of the criminal offense as defined by [Ohio] law." Sanford, 288 F.3d at 860; Draggo, 65 Ohio St.2d at 90, 418

12

N.E.2d at 1345; Jalowiec, 91 Ohio St.3d at 228, 744 N.E.2d at 174; Gardner, 42 Ohio App.3d at 158, 536 N.E.2d at 1188. Again, the first ground of the petition should not be granted on the basis of improper venue, even argued as an insufficiency of the evidence claim.

>The second ground of the petition is:
>
>The trial court erred to the prejudice of appellant by finding him guilty of aiding and abetting first degree trafficking. A conviction for complicity is proper only when the evidence establishes that a person acts as an aider and abettor rather than a principal offender.

(Doc. 1, at § 12.) The respondent characterizes this claim as a state law issue. (Doc. 9, at 10.) The respondent points out that "the record does not even indicate that the trial court found Kruse guilty as a principal offender rather than as a complicitor." Id. at 12.

Kruse had argued that because there was evidence that established his conduct as a principal offender, it was improper for the court to consider a complicity theory. (Doc. 9, RX H, at 11-12.) The respondent asserts that:

>. . . the record fully supports a finding that Kruse was guilty based on a complicity theory. Ohio's complicity statute prohibits a person from aiding or abetting another in committing an offense while acting with the kind of culpability required for the commission of the offense. Ohio Rev. Code § 2923.03(A)(2).

(Doc. 9, at 12.) Respondent also quotes from State v. Johnson, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001) (syllabus), to wit:

>To support a conviction for complicity by aiding and abetting pursuant to Ohio Revised Code Section 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and

13

>that the defendant shared the criminal intent of the principal. Such
>intent may be inferred from the circumstances surrounding the crime.

Id. at 13, quoting Johnson.

The court of appeals pointed out that one found guilty of complicity "shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense." (Doc. 9, RX F, at 14; Kruse, 2006 WL 1718194, at *7, quoting Ohio Rev. Code § 2923.03(F).) Kruse conceded there was sufficient evidence to convict him of trafficking in cocaine. Id.; doc. 9, RX D, at 9.

As will be recalled, Kruse was indicted on three counts of trafficking in cocaine, all in violation of Ohio Rev. Code §§ 2925.03(A)(1) and (C)(4)(e), and a fourth count of engaging in a pattern of corrupt activity in violation of Ohio Rev. Code § 2923.32(A)(1). (Doc. 9, RX A, indictment.) Kruse was acquitted on the fourth count, but convicted on the three counts of trafficking in cocaine. (Doc. 9, RX B, judgment entry.) There is no indication in the judgment entry as to whether the defendant's guilt on the trafficking charges was determined to be as a principal offender, or as an aider or abettor. In any event, Kruse was neither charged nor convicted under Ohio Rev. Code § 2923.03(A)(2) (complicity). As stated above, Kruse concedes that there was evidence in the record to support the convictions for trafficking. (Doc. 9, RX D, at 9, 19, 24-25.)

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crimes of

trafficking, the crimes of which Kruse was indicted and convicted, beyond a reasonable doubt. <u>Jackson</u>, 443 U.S. at 319; <u>Bagby</u>, 894 F.2d at 794. The petition should not be granted on the second ground.

## V. SUMMARY

The petition for a writ of habeas corpus should be denied. Kruse has not established that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

## RECOMMENDATION

It is recommended that the petition be denied.

Dated:  March 11, 2008            /s/ Kenneth S. McHargh
                                  Kenneth S. McHargh
                                  United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time WAIVES the right to appeal the District Court's order. See <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).